[Cite as *Gringo v. Hanak*, 2026-Ohio-1452.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ANTHONY J. GINGO, JR., M.D.,          :

     Plaintiff-Appellee,          :

                                             No. 115341

     v.          :

JANE HANAK,          :

     Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 23, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-973797

---

### *Appearances:*

Reminger Co. L.P.A., Brianna M. Prislipsky, and Brian D. Sullivan, *for appellee*.

Vasvari | Zimmerman and Raymond V. Vasvari, Jr., *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Jane Hanak ("Hanak" or "Jane Hanak") appeals the trial court's decision granting summary judgment in favor of Anthony Gingo, Jr., M.D. ("Dr. Gingo"). Hanak also appeals the trial court's award of $145,000 in

compensatory damages and $100,000 in punitive damages, as well as its finding that she is a vexatious litigator. After a thorough review of the facts and the law, we find no merit to the appeal and affirm.

{¶ 2} Dr. Gingo is a board-certified obstetrician and gynecologist who performed a surgical procedure on Hanak in April 2017. On September 5, 2019, more than two years after that procedure was performed, Hanak initiated proceedings against Gingo, alleging that he and Dr. Kimberly Kraus, a gynecologist who performed a subsequent procedure, rendered negligent medical care and treatment. *See Hanak v. Kraus*, Cuyahoga C.P. No. CV-19-921015. The complaint was voluntarily dismissed on January 24, 2020. On January 26, 2021, Hanak refiled the complaint. *See Hanak v. Kraus*, Cuyahoga C.P. No. CV-21-943309. Dr. Gingo filed a motion to dismiss, which the trial court granted. Hanak appealed. This court affirmed the trial court's decision. *See Hanak v. Kraus*, 2022-Ohio-1941 (8th Dist.).[1]

{¶ 3} Sometime between June and August 2022, Hanak published a review of Dr. Gingo on the online platform Yelp. The review stated the following:

> Gingo MD is a sexual predator. He is NOT a Pelvic Reconstruction specialist. He is a Rapist. Commits Insurance Fraud. The Hospital Lawyers hide this criminal/Felon. He has NO hospital privileges to perform any cosmetic or reconstruction pelvic surgeries. Urogynecologist are reconstruction specialist requiring a 3 year fellowship in addition to being a board certified gynecologist which are

---

[1] While her appeal was pending before this court, Hanak, acting pro se, filed multiple lawsuits in the Cuyahoga County Court of Common Pleas that related to her surgery. Dr. Gingo was a named defendant in some of the suits. *See Hanak v. Univ. Hosp., et al.*, Cuyahoga C.P. No. CV-22-963270, *Hanak v. Southwest Gen. Hosp., et al.*, Cuyahoga C.P. No. CV-22-963730, *Hanak v. Gingo, et al.*, Cuyahoga C.P. No. CV-22-964069, and *Hanak v. Kraus, et al.*, Cuyahoga C.P. No. CV-22-964286.

trained in reproductive organs. Dr. Gingo butchered me without my consent or knowledge, practicing and experimenting on women for over 5 years. He would not tell me what he had done. Major gastrointestinal issues developed as well as sexual disfunction [sic]. He did not have hospital privileges. He altered my consent, added internal procedures, extending my anesthesia, exasperating my autoimmune disease, altering my body to suit "His" perverted sexual tastes and desires. Taking graphic nude photos in the surgical room, unconscious, without my knowledge. SW General will hide the privilege lists of the doctors who practice at this privately owned, by doctors, facility. Go to Cleveland Clinic. Their doctors [sic] privileges are listed for every doctor under Treatments and services. Why does SW General hide their doctor's [sic] lists? As long as they receive insurance payment, they don't care about patient safety, money is their God they ascribe to. SW has their own police department. City police refuse to take your report, internal investigations are illegal. The SW police do not even have a detective. Maybe this is why Sexual assault and battery is not reported, you simply are forced to "Cease and Desist." Seriously, Run for your life. Gingo and Kraus have many lawsuits. Sadly, a preganant [sic] woman lost her life after a major stroke, damaged babies, nurses suing him for his outrageous behavior. This doctor and Hospital appear to hate women. They conceal Hate Crimes. Crimes against humanity and civil rights.[2]

{¶ 4} Dr. Gingo's wife, Holly Gingo ("Holly"), saw the review on Yelp and informed Dr. Gingo about it. She estimated she saw the review about two to three months after Hanak posted it.

{¶ 5} On January 13, 2023, Dr. Gingo filed suit against Hanak and her husband, Mark Hanak, alleging defamation, defamation per se, and defamation by

---

[2] Hanak included the Yelp review as an exhibit in her brief in opposition to Dr. Gingo's motion for summary judgment.

implication based on Hanak's Yelp review.[3]  He also sought to have Hanak and her husband declared vexatious litigators.

{¶ 6} Hanak answered and filed numerous counterclaims, all of which the trial court eventually dismissed.  Hanak filed a "second answer," various motions to compel, and for sanctions against Dr. Gingo.  The trial court denied the motions to compel and for sanctions.

{¶ 7} Dr. Gingo moved for summary judgment, supported by an affidavit and portions of Hanak's deposition.  Hanak responded, arguing that there was no evidence of damages, the statements made in her Yelp review were true, and there was no evidence anyone actually saw the Yelp review before it was taken down.  Attached to Hanak's opposition brief were numerous unauthenticated exhibits.

{¶ 8} The trial court granted Dr. Gingo's motion for summary judgment in part.  The court found that Hanak admitted to making multiple statements about Dr. Gingo, and those statements were false.  The court further found that Hanak's statements were defamation per se, because they were words that "import an indictable criminal offense involving moral turpitude or infamous punishment and tend to injure" Dr. Gingo's profession.  The trial court entered judgment in Dr. Gingo's favor on the defamation per se claim and left the defamation by implication

---

[3] Mark Hanak was a named defendant throughout this litigation; however, the trial court's damages and attorney fees awards named only Jane Hanak.  Mark Hanak is not a party to this appeal; therefore, discussion will be limited to Jane Hanak.

claim pending.[4]   The court declared the Hanaks vexatious litigators pursuant to R.C. 2323.52.  The court set the matter for a damages hearing.

{¶ 9} Hanak, who proceeded pro se until this point, obtained counsel, who moved for reconsideration of the motion for summary judgment.  In support of her motion, Hanak attached an affidavit from Irene Fox ("Fox"), a friend and nurse who was previously employed at the same hospital as Dr. Gingo.  The trial court denied the motion for reconsideration.

{¶ 10} At the damages hearing, Dr. Gingo testified as to the harm caused by Hanak's Yelp review.  The trial court subsequently awarded the doctor $245,000 in damages, which included $50,000 for damage to reputation, $50,000 for mental anguish, and $45,000 for loss of society. The award also included $100,000 in punitive damages, based upon a finding that Hanak acted with hatred, ill will, or a spirit of revenge, or with disregard to Dr. Gingo's rights and safety.  Later, the court held a separate hearing on attorney fees and awarded $93,437.47 in attorney fees to Dr. Gingo.

{¶ 11} Hanak filed for leave to appeal to this court, which was granted.  Hanak raises eight assignments of error for our review:

> I. The Trial Court erred to Mrs. Hanak's prejudice when it granted summary judgment in favor of Dr. Gingo in the liability phase of this defamation action because a genuine issue of material fact exists as to whether the alleged defamatory assertions in the Yelp Review of Dr. Gingo were true or false.
>
> II.  The Trial Court erred to Mrs. Hanak's prejudice when it granted summary judgment in favor of Dr. Gingo in the liability phase of this

---

[4] Dr. Gingo later dismissed his claim for defamation by implication.

defamation action because Dr. Gingo had the burden to prove actual damages, and a genuine issue of material fact exists as to whether Dr. Gingo was actually damaged by the allegedly defamatory assertions in the Yelp Review about him.

III. The Trial Court erred to Mrs. Hanak's prejudice when it granted summary judgment to Dr. Gingo in the liability phase of this defamation action because a genuine issue of material fact exists as to whether the Yelp Review was published with actual malice.

IV. The Trial Court erred to Mrs. Hanak's prejudice when it granted summary judgment in favor of Dr. Gingo in the liability phase of this defamation action because the assertions in the allegedly defamatory Yelp Review, even if published by Mrs. Hanak, relate to matters of public concern and were thus privileged as a matter of Ohio law.

V. The Trial Court erred to Mrs. Hanak's prejudice when it quashed the subpoena issued to Dr. Michael Deucher and excluded Mrs. Hanak's primary supporting witness, Irene Fox, from testifying at the damages hearing, because the testimony of these witnesses was directly relevant to whether the assertions in the allegedly defamatory Yelp Review were true and were made maliciously.

VI. The Trial Court's excessive damages award against Mrs. Hanak constitutes plain error.

VII. The Trial Court erred to Mrs. Hanak's prejudice when it declared Mrs. Hanak to be a vexatious litigator on summary judgment.

VIII. The Trial Court erred to Mrs. Hanak's prejudice when it considered only improperly authenticated excerpts from her deposition, in lieu of the complete, authenticated transcript, as the basis for its summary judgment decision.

## Summary Judgment

{¶ 12} Hanak's first through fourth and eighth assignments of error challenge the trial court's decision to grant summary judgment in favor of Dr. Gingo. For ease of discussion, we combine these assigned errors for review.

{¶ 13} In the first assignment of error, Hanak argues that the trial court erred in granting summary judgment because there was an issue of fact regarding whether the published statements were true. In the second and third assignments of error, Hanak challenges the definition of defamation per se. In the fourth assignment of error, Hanak claims the Yelp statements were matters of public concern and therefore privileged. In the eighth assignment of error, Hanak claims that the trial court erred in considering only part of her deposition.

{¶ 14} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶ 15} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217 (1994).

{¶ 16} The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements

of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). "To accomplish this, the movant must be able to point to the evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Id.* These include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." Civ.R. 56(C). "These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.* at 293.

{¶ 17} If the moving party fails to meet this burden, then summary judgment is not appropriate. However, if the moving party satisfies this initial burden, then the nonmoving party has the burden to set forth specific facts by the means listed above in Civ.R. 56(C) demonstrating that there is a genuine issue of material fact. *Id.*

**Defamation Per Se**

{¶ 18} "Defamation is a false publication that injures a person's reputation, exposes him [or her] to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his [or her] trade or business." *Kanjuka v. MetroHealth Med. Ctr.*, 2002-Ohio-6803, ¶ 15 (8th Dist.). To establish a claim for defamation, a plaintiff must demonstrate: (1) a false statement of fact was made about the plaintiff, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement.

*Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77, citing *Pollock v. Rashid*, 117 Ohio App.3d 361 (1st Dist. 1996).

{¶ 19} Defamation per se occurs when the defamation is manifested by the very words spoken. *Montgomery v. Greater Cleveland Regional Transit Auth.*, 2021-Ohio-1198, ¶ 29 (8th Dist.). A statement is defamatory per se where it supports an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease that excludes one from society or tends to injure one in the person's trade or occupation. *Montgomery* at *id.*, citing *Kanjuka* at ¶ 16. Where the statement constitutes defamation per se, damages and actual malice are presumed. *Montgomery* at *id.*, citing *Kanjuka* at *id.*[5]

{¶ 20} In his motion for summary judgment Dr. Gingo claimed that Hanak's Yelp review was defamation per se.

{¶ 21} For the reasons set forth below and based on our de novo review, the following statements from Hanak's Yelp review, which she admitted to publishing, were actionable:

1. Dr. Gingo is a sexual predator.
2. Dr. Gingo is a rapist.
3. Dr. Gingo commits insurance fraud.

---

[5] The expression of an opinion is generally immune from liability under the Ohio and United States Constitutions. *Montgomery* at ¶ 33, citing *Mehta v. Ohio Univ.*, 2011-Ohio-3484 (10th Dist.). Although Hanak stated in her brief in opposition to Dr. Gingo's motion for summary judgment that her "opinion" was based on "fact," on appeal, Hanak does not contend that her statements were nondefamatory because they were her opinion.

4. Dr. Gingo does not have hospital privileges to perform cosmetic or pelvic reconstruction surgeries.

5. Dr. Gingo butchered Hanak.

6. Dr. Gingo altered Hanak's consent.

7. Dr. Gingo experiments on other women.

8. Dr. Gingo altered Hanak's body to suit his perverted sexual taste and desires.

9. Dr. Gingo concealed hate crimes, crimes against humanity, and crimes against civil rights.

10. Dr. Gingo hates women.

{¶ 22} A plaintiff must prove falsity as an essential element of a defamation claim and, because falsity is an essential element, a true statement cannot provide the basis for such an action. *Natl. Medic Servs. Corp. v. E. W. Scripps Co.*, 61 Ohio App.3d 752, 755 (1st Dist. 1989). Therefore, "[i]n Ohio, truth is a complete defense to a claim for defamation." *Montgomery*, 2021-Ohio-1198, at ¶ 30 (8th Dist.), citing *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433 (1996).

{¶ 23} In support of his motion for summary judgment, Dr. Gingo averred that the statements made by Hanak were false and that he had never raped, sexually assaulted, or acted in any inappropriate fashion to any person, including Hanak; never concealed any kind of criminal conduct, including hate crimes, crimes against humanity, and crimes against civil rights; never rendered medical care and treatment without proper licenses or privileges; never altered any patient's consent records; did not alter Hanak's body to "suit any claimed personal desires"; never

committed insurance fraud; did not take graphic photographs of Hanak without her consent or for any improper purpose; and has not experimented on other women.

{¶ 24} In response, Hanak argues that issues of material fact remain whether her statements were true. To support her claim, Hanak attached numerous exhibits to her brief in opposition.

{¶ 25} "Civ.R. 56(C) provides an exclusive list of materials that a trial court may consider when deciding a motion for summary judgment." *Hopper v. Landen Auto Mart, LLC*, 2025-Ohio-2275, ¶ 25 (12th Dist.), citing *State ex rel. Varnau v. Wenninger*, 2011-Ohio-3904, ¶ 7 (12th Dist.). Again, those materials are "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact." Civ.R. 56(C). "[A] party may properly introduce evidence not specifically authorized by Civ.R. 56(C) by incorporating it by reference through a properly framed affidavit pursuant to Civ.R. 56(E)." *Hopper* at *id.*, citing *Wilson v. AIG*, 2008-Ohio-5211, ¶ 29 (12th Dist.).

{¶ 26} Hanak's list of exhibits include numerous printouts purportedly about Dr. Gingo, including an online "license lookup," Google search results, printouts from various local hospitals, personal medical information, letters from law firms, letters from various hospitals, emails, educational material, a hospital employee handbook and bylaws, emails between Hanak and hospital employees, and the Yelp review. Also included in the exhibit list (marked Exhibit 1B) was the first page of Dr. Gingo's first set of requests for admissions and interrogatories.

{¶ 27} None of the exhibits, except perhaps for Exhibit 1B, are the type of materials enumerated in Civ.R. 56(C). Therefore, the trial court did not err in failing to consider these materials.

{¶ 28} Hanak's statements that Dr. Gingo, an OB/GYN, committed rape and insurance fraud, surgically altered Hanak's body for fetishistic purposes, and participated in hate crimes, crimes against humanity, and human rights abuses were allegations that import indictable criminal offenses involving moral turpitude and, for Dr. Gingo in particular, were injurious to his work providing intimate healthcare to women. Consequently, the trial court was correct in finding that Hanak's statements were defamation per se. Additionally, because the statements were defamation per se, Dr. Gingo did not need to prove actual damages or that the statements were made with malice as was asserted in Hanak's second and third assignments of error.

{¶ 29} Hanak also cannot show that her statements were privileged as asserted in her fourth assignment of error.

{¶ 30} If a claimant establishes a prima facie case of defamation, a defendant "may invoke the defense of 'conditional' or 'qualified' privilege.'" *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995), citing *Hahn v. Kotten*, 43 Ohio St.2d 237 (1975). Hanak argues that her statements were privileged because they "implicated matters of public health and safety," the "community's safety and welfare," and matters of "significant social and legal concern."

{¶ 31} The essential elements of a communication protected by qualified privilege are that the statement was made in good faith, there is an interest to be upheld, the statement is limited in its scope to this purpose, a statement made on a proper occasion, and publication was in a proper manner and to proper parties only. *Mallory v. Ohio Univ.*, 2001 Ohio App. LEXIS 5720, *21-22 (10th Dist. Dec. 20, 2011), citing *Austin v. Peterson*, 1999 Ohio App. LEXIS 27 (9th Dist. Jan. 13, 1999).

{¶ 32} Hanak has failed to demonstrate that any of the above circumstances apply. Hanak has provided no evidence that her statements were made in good faith. Her statements were also not limited in scope and were not published in a proper manner or to proper parties. Indeed, Hanak took a single grievance related to a surgical procedure and extrapolated it into a rape allegation, human rights abuses, and various other crimes, which she then published on the internet, where it was publicly visible.

{¶ 33} Finally, Hanak contends that the trial court erroneously considered only parts of her deposition testimony rather than the entire transcript. If there were portions of Hanak's deposition testimony that she wanted the court to consider, she should have included those portions in her brief in opposition to Dr. Gingo's motion for summary judgment.

{¶ 34} The statements made by Hanak in her Yelp review would tend to subject Dr. Gingo to ridicule, contempt, and hatred. Dr. Gingo met his burden of demonstrating that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law.

{¶ 35} The first through fourth and eighth assignments of error are overruled.

**Motion to Quash and Exclusion of Witness Testimony**

{¶ 36} In the fifth assignment of error, Hanak argues that the trial court erred when it quashed subpoenas for two nonparties: Dr. Michael Deucher and her friend Irene Fox, a nurse.[6] According to Hanak, their testimony was relevant to whether the alleged defamatory statements were true and whether they were made maliciously.

{¶ 37} Hanak claims that Dr. Deucher's testimony was necessary to show that Dr. Gingo lacked relevant privileges to perform the medical procedures on Hanak. She claims that Fox's testimony was relevant because Fox would have testified that Dr. Gingo violated hospital policy, performed nonconsensual procedures on Hanak, did not have the privileges to perform the procedures, and committed insurance fraud.

{¶ 38} Civ.R. 45(C)(4) provides:

On timely motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or production only under specified conditions, if the subpoena does any of the following:

(a) Fails to allow reasonable time to comply;

(b) Requires disclosure of privileged or otherwise protected matter and no exception or waiver applies;

(c) Requires disclosure of a fact known or opinion held by an expert not retained or specially employed by any party in anticipation of litigation

---

[6] Dr. Deucher and Fox were two of the dozen nonparty witnesses Hanak subpoenaed; the trial court granted the motions to quash of all nonparty witnesses.

or preparation for trial as described by Civ.R. 26(B)(7)(h), if the fact or opinion does not describe specific events or occurrences in dispute and results from study by that expert that was not made at the request of any party;

(d) Subjects a person to undue burden.

{¶ 39} We review a trial court's ruling to quash or enforce a subpoena for an abuse of discretion. *HDDA, LLC v. Vasani*, 2025-Ohio-2000, ¶ 5 (10th Dist.), citing *Evans v. Ohio Dept. of Rehab. & Corr.*, 2018-Ohio-1035 (10th Dist.). We also review a trial court's decision to exclude a witness from testifying for an abuse of discretion. *See State v. Thompson*, 2010-Ohio-1680, ¶ 65 (2d Dist.), citing *Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109 (1989) (appellate courts review the decision whether to exclude or admit testimony of a lay witness pursuant to Evid.R. 701 under an abuse-of-discretion standard.) An abuse of discretion occurs when "a court [exercises] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 40} In his motion to quash, Dr. Deucher argued that the notice he was provided (two weeks) was insufficient time for him to manage his schedule of patients in order to appear for the damages hearing. The subpoena also reflected numerous matters that were irrelevant to a damages hearing, such as Dr. Gingo's surgical privileges at the time he operated on Hanak. As it relates to Fox, the nurse had previously worked at the same hospital as Dr. Gingo but had no personal knowledge of the care he rendered to Hanak. Fox did not observe Hanak's surgery, had no knowledge of discussions between Dr. Gingo and Hanak, and had only

reviewed Hanak's medical records (it is unclear which medical records she reviewed).

{¶ 41} Hanak contends that she did not intend to have Fox testify as an expert; instead, Fox was to testify to what she told Hanak about Dr. Gingo, which led to Hanak believing that her statements were true. The matter of whether the statements were defamatory had already been determined; therefore, any testimony regarding the veracity of the statements was not properly before the trial court.

{¶ 42} Dr. Deucher and Fox had no personal knowledge of Dr. Gingo's damages; therefore, Dr. Deucher's motion to quash, and the exclusion of Fox's testimony, was not an abuse of discretion.

{¶ 43} The fifth assignment of error is overruled.

**Damages Award**

{¶ 44} In the sixth assignment of error, Hanak argues that the trial court's damages award constitutes plain error.

{¶ 45} As an initial matter, we note that although Hanak stated that she was challenging the award of attorney fees in this assigned error, her argument is devoid of mention of the issue. Therefore, in accordance with App.R. 12(A)(2) and 16(A), we decline to consider the propriety of the award.

{¶ 46} Hanak concedes that she did not challenge the damages award with the trial court; therefore, we review solely for plain error. Plain error "may only be applied in the extremely rare case involving exceptional circumstances" where an unobjected-to error "seriously affects the basic fairness, integrity, or public

reputation of the judicial process thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123 (1997).

{¶ 47} According to Hanak, the award was excessive because Dr. Gingo could not show that anyone saw the Yelp review, he did not know if he lost doctor referrals because of the review, and he never asked Hanak to remove the review.

{¶ 48} Dr. Gingo testified that he had been practicing medicine in Cleveland, Ohio as a board-certified OB/GYN since 1992. According to Dr. Gingo, as a male OB/GYN, he has had to develop relationships and trust with his patients: "An OB/GYN is different. Again, it's very personal. You grow up with a lot of these women, you deliver them, you deliver their babies, it's — and — it's just a very, very personal and sensitive interaction." (Tr. 109-111).

{¶ 49} Dr. Gingo testified that once he found out about the review, the process to get Yelp to take the review down took weeks; it was not instantaneous. Dr. Gingo testified that after the review was published, his patient load dropped by half. Dr. Gingo, who was 62 at the time of the hearing, planned on working until he was 75 years of age. However, the stress from the review was so severe that he decided to retire, testifying that being a doctor is "the only thing I wanted to do my whole life and she's ruined it." (Tr. 132). He further testified "that's why I'm quitting, because I get that sense from all my patients now. I can't — I don't feel the same interaction any longer. I don't know who saw this, I don't know who read it and it's ruined me," "my reputation has been destroyed." (Tr. 143, 147).

Additionally, because of the protections afforded by HIPAA, Dr. Gingo was constrained from addressing the statement publicly, even in his own defense. Dr. Gingo testified that he was pressured to step down from his position as chairman of the quality committee at the hospital where he worked as a result of the review and that the review severely impacted his close relationships and friendships. Finally, he testified that it has negatively impacted intimate relations with his wife.

{¶ 50} Holly Gingo, Dr. Gingo's spouse, testified to the impact that the review had on their 36-year marriage as well as her husband's medical practice, where she was employed as a nurse. According to Holly, their patient numbers dropped soon after the review was published, from 100-120 patients per week to 60-68 patients per week. She further testified that her husband used to practice cosmetic gynecology but ever since Hanak posted her review, their office has received no new patient inquiries for the service.

{¶ 51} The evidence presented at the damages hearing supported the trial court's award of $145,000 in compensatory damages. The defamatory statements also supported the trial court's award of $100,000 in punitive damages, because it is clear that Hanak's statements were published with hatred, ill will, a spirit of revenge, or with disregard to Dr. Gingo's rights and safety. Moreover, these awards were only given after a full hearing during which Hanak was given the opportunity to cross-examine Dr. Gingo and his witnesses and to present her own testimony in her defense. Therefore, we cannot say that this is the exceptional case that warrants reversal.

{¶ 52} The sixth assignment of error is overruled.

**Vexatious Litigator**

{¶ 53} In the seventh assignment of error, Hanak challenges her designation as a vexatious litigator.

{¶ 54} In its order granting summary judgment, the trial court found that Hanak was a vexatious litigator pursuant to R.C. 2323.52. A vexatious litigator "is a person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions." R.C. 2323.52(A)(3).

{¶ 55} R.C. 2323.52(B) provides a party can be declared a vexatious litigator "in a court of common pleas with jurisdiction over the person who has allegedly engaged in the habitual and persistent vexatious conduct . . . ." The parties concede that Hanak had already been declared a vexatious litigator at the time the order in this case was entered. *See Hanak v. W. Res. Ins. Co., et al.*, Cuyahoga C.P. No. CV-23-973505 (order dated Feb. 6, 2024). In that case, pursuant to R.C. 2323.52(D)(1), the trial court ordered that Hanak was prohibited from

> 1. Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court;
>
> 2. Continuing any legal proceedings that the vexatious litigator had instituted in the court of claims or in a court of common pleas, municipal court, or county court prior to the entry of the order;
>
> 3. Making any application, other than an application for leave to proceed under R.C. 2323.52(F), in any legal proceedings instituted by . . . Jane Hanak . . . or another person in the court of claims or in a court of common pleas, municipal court, or county court.

(Order dated Feb. 6, 2024).

{¶ 56} Thus, because Hanak had already been declared a vexatious litigator, she would have had to challenge that finding by appealing the court's decision in Cuyahoga C.P. No. CV-23-973505.

{¶ 57} The seventh assignment of error is overruled.

{¶ 58} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EMANUELLA D. GROVES, P.J., and
TIMOTHY W. CLARY, J., CONCUR